# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

RICKEY WESLEY, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

    *Plaintiff*,

v.

EXPERIAN INFORMATION SOLUTIONS,
INC.

    *Defendant*.

§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO.  4:18-CV-00005
Judge Mazzant

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. #47). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **GRANTED in part**.

## BACKGROUND

Plaintiff Rickey Wesley was employed by Defendant Experian Information Solutions, Inc. as a U.S.-based Information Technology ("IT") employee. Plaintiff's responsibilities include troubleshooting and supporting Experian's global security operations.  Experian classifies Plaintiff as hourly-paid and non-exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA").

Because Experian must monitor and maintain information technologies that protect sensitive and confidential information of their clients, there are times when its employees must answer calls for issues that arise outside of their regular work hours.  Until October 2017, Experian maintained an On Call, Standby and Call-Back Time Policy (the "Policy") that applied to all US-

based non-exempt employees (Dkt. #11, Exhibit C).  The Policy required employees to perform

work beyond their regularly scheduled shifts and assigned tasks while on either "standby" or "on

call."  Compensation for overtime was different based on the designation.  For "on call" work,

employees were assured

> Any time that you actually provide assistance – over the telephone, by logging in
> to work remotely, or by reporting to work – is work time for which you will receive
> your regular rate of pay or overtime pay, as appropriate.

(Dkt. #11, Exhibit C at ¶ 3.1).  For "standby" work, employees were assured

> If, because of critical business needs, you are required to be more immediately
> available to begin work than the on-call standards, these hours would be considered
> standby time and you will receive your regular or overtime rate of pay for all
> standby time.

(Dkt. #11, Exhibit C at ¶ 3.3).  Accordingly, in contrast to being compensated for all "standby"

time, these employees were not compensated for all hours spent "on call".  Rather, they were only

compensated for the time spend acknowledging and responding to a call.

On October 23, 2020, Defendant filed the present motion (Dkt. #47).  On November 20,

2020, Plaintiff filed a response (Dkt. #54).  On December 7, 2020, Defendant filed a reply (Dkt.

#61).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims

or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper

under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine when "the evidence is such that

a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby Inc.*,

477 U.S. 242, 248 (1986).  Substantive law identifies which facts are material.  *Id.*  The trial court

"must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or

weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Defendant asks the Court to dismiss the claims of all Plaintiffs.  In support of its request, Defendant asserts that Plaintiff Shelton's ("Shelton") claim is time-barred.  Further, Defendant claims that Plaintiffs' time spent on-call is not compensable.  Finally, Defendant argues that any claim for time that Plaintiffs Dodson and O'Connor did not record should be dismissed because they "did so at their own choosing, and not because [Defendant] required it" (Dkt. #47 at p. 35).

Plaintiffs respond that summary judgment is improper because Plaintiffs' claims are fully compensable under the FLSA.  Further, Plaintiffs claim that Defendant is required to pay for all hours worked by Plaintiffs.

The Court will address each of Defendant's arguments in turn.

### I.   Shelton's Claim

The FLSA provides for a general two-year statute of limitations.  29 U.S.C. § 255(a). However, if the "cause of action aris[es] out of a willful violation" of the FLSA, the statute of limitations is extended to three years.  *Id.*  A willful violation occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing the standard adopted in *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–130 (1985)).[1]  Defendant claims that because Shelton was only employed until 2015, any claims he might have fall outside the applicable statute of limitations.

---

[1] The Court assumes, for purposes of this Opinion, that the three-year statute of limitations applies, and that Plaintiffs can, in fact, show a willful violation of the FLSA.

For purposes of the FLSA "[a] cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271 (5th Cir. 1987), *modified on other grounds*, 862 F.2d 2 (5th Cir. 1987) (citing *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050–51 (5th Cir.)).  Further, "in a FLSA collective action, the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the opt-in date." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916–17 (5th Cir. 2008) (citing *Atkins v. Gen. Motors Corp.*, 710 F.2d 1124, 1130 n.5 (5th Cir. 1983)).

Defendant employed Shelton from March 17, 2014 until Shelton voluntarily resigned on October 15, 2015.  Any cause of action Shelton could bring therefore accrued no later than his last day of employment—namely, October 15, 2015.  Thus, the statute of limitations barred all claims by Shelton filed after October 15, 2018.  Shelton did not opt-in to the lawsuit until November 12, 2018 (Dkt. #31, Exhibit 4).  The Court finds that Shelton's claims are untimely.[2]

## II.   Plaintiffs' Time Spent On-Call[3]

Defendant argues that "[t]he deposition testimony of the Representative Plaintiffs establishes that [Defendant] did not violate the FLSA because employees were able to use their time for their own activities while they were on call after regular work hours" (Dkt. #47 at p. 27).  As such, Defendant asks the Court dismiss all Plaintiffs' claims.

---

[2] Plaintiffs have not asserted any tolling provisions that might apply to save Shelton's claims.  In fact, Plaintiffs did not address Shelton's claims at all in their response.

[3] Insofar as Plaintiffs allege that the time spent "on-call" qualified as "standby time" as defined under the policy, the Court finds that argument unpersuasive.  "Standby time" required an employee be "more immediately available to begin work than the on-call standards" (Dkt. #47 at p. 10).  However, Plaintiffs "understood their duties to always be considered 'on-call' time" (Dkt. #47 at p. 11).  Further, Plaintiffs do not claim that they were actually required to be "more immediately available," but they instead argue that "the details of constraints and restrictions Plaintiffs face during on-call overtime" shifts on-call time into standby time (Dkt. #54 at p. 15).  The Court will address the constraints and restrictions in its on-call analysis.

The FLSA requires an employer to compensate an employee who works "longer than forty hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(2).  Courts look to "the circumstances of the case" when determining whether an employee "working" for FLSA purposes.  *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).  The key inquiry regarding the definition of "work" is "[w]hether time is spent predominately for the employer's benefit."  *Id.*

"The U.S. Department of Labor, Wage and Hour Division, Fact Sheet #22 notes that on-call time, spent away from the office, is not compensable in most circumstances."  *Driscoll v. Fannin Cty., Tex.*, No. 4:12-cv-24, 2013 WL 644305, at *2 (E.D. Tex. Jan. 4, 2013), report and recommendation adopted, 2013 WL 617055 (E.D. Tex. Feb. 19, 2013).  Fact Sheet #22 states:

> Whether waiting time is hours worked under the Act depends upon the particular circumstances.  Generally, the facts may show that the employee was engaged to wait (which is work time) or the facts may show that the employee was waiting to be engaged (which is not work time).  For example, a secretary who reads a book while waiting for dictation or a fireman who plays checkers while waiting for an alarm is working during such periods of inactivity. These employees have been "engaged to wait."

Further, regarding on-call time, Fact Sheet #22 states:

> An employee who is required to remain on call on the employer's premises is working while "on call."  An employee who is required to remain on call at home, or who is allowed to leave a message where he/she can be reached, is not working (in most cases) while on call.  Additional constraints on the employee's freedom could require this time to be compensated.

"The Code of Federal Regulation further explains that, in order to be compensable, the employer must specifically and significantly restrict the employee's use of their personal time to the point it is no longer their personal time."  *Driscoll*, 2013 WL 644305, at *2.  According to 29 C.F.R. § 553.221,

> (c) Time spent away from the employer's premises under conditions that are so circumscribed that they restrict the employee from effectively using the time for

personal pursuits also constitutes compensable hours of work.  For example, where a police station must be evacuated because of an electrical failure and the employees are expected to remain in the vicinity and return to work after the emergency has passed, the entire time spent away from the premises is compensable.  The employee in this example cannot use the time for their personal pursuits.

(d) An employee who is not required to remain on the employer's premises but is merely required to leave word at home or with company officials where he or she may be reached is not working while on call.  Time spent at home on call may or may not be compensable depending on whether the restrictions placed on the employee preclude using the time for personal pursuits.  Where, for example, an employee in fire protection activities has returned home after the shift, with the understanding that he or she is expected to return to work in the event of an emergency in the night, such time spent at home is normally not compensable.  On the other hand, where the conditions placed on the employee's activities are so restrictive that the employee cannot use the time effectively for personal pursuits, such time spent on call is compensable.

29 C.F.R. § 553.221(c) and (d).

"[I]n a proper setting, on-call time may be working time for purposes of [FLSA] section 7."  *Bright v. Hous. Northwest Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 675 (5th Cir. 1991). However, "that is *not* true of employer-required on call time in *all* settings."  *Id.* (emphasis in original).  While the determination of whether on-call time qualifies as working time is typically a fact question, when "the undisputed facts show that the on-call time is not working time[,]" the Fifth Circuit has "not hesitated to hold so as a matter of law."  *Id.* (collecting cases).  The relevant test is 'whether the employee can use the [on-call] time for his . . . own purposes."  *Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185, 1189 (5th Cir. 1989) (citing 29 C.F.R. §§ 785.16–.17 (1987)). "The Fifth Circuit has been extremely reluctant to uphold rewards of compensation for 'on-call' time, noting . . . that '[e]mployees who have received compensation for idle time generally have had almost no freedom at all.'"  *Driscoll*, No. 4:12-cv-24, 2013 WL 644305, at *3 (quoting *Bright*, 934 F.2d at 676).  Defendants do not cite to any Fifth Circuit precedent for the premise that waiting time is considered working time, and the Court is only aware of one instance—*Mireles v. Frio*

7

*Foods, Inc.*, 899 F.2d 1407 (5th Cir. 1990)—where the Fifth Circuit found as much. The restrictions on employees in *Mireles* were much more restrictive than those presented in this case.

In *Mireles*, Frio Food, Inc., the Defendant, "specifie[d] a time for its employees to arrive at work." *Id.* at 1414. Upon arriving to work, Defendant's employees were required to sign-in, despite being unable to immediately begin work due to "waits . . . often caused by a delay in the arrival of produce or a mechanical problem at the plant." *Id.* Perhaps most importantly, "[employees] are not 'clocked in' on the master time card that is controlled by [Defendant] and, therefore, are not paid for this idle time." *Id.* "Where an employee is required by his employer to report to work at a specified time, and the 'employee is there at that hour ready and willing to work but' is unable to begin work for a period of time for some reason beyond his control, the employee is engaged to wait and is entitled to be paid for the time spent waiting." *Id.* (quoting 29 C.F.R. § 790.7(h); also citing *Halferty*, 864 F.2d at 1189). The employees in *Mireles*, unlike the plaintiffs in the present case, were not free to work from a place of their choosing. Nor could the employees spend the time between "signing in" and beginning work "effectively for their own purposes."

The Court must look to each Plaintiff to ensure that the undisputed facts show that on-call time was not working time. Ultimately, the Court must decide whether each Plaintiff was "engaged to wait" or "wait[ing] to be engaged." *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944).

As a threshold matter, the Court notes that the policy in place during the relevant period provided a section entitled "expectations." This section of the policy stated:

> While on-call, you are expected the respond to a page or telephone call within 30 minutes. You must call the appropriate manager and reach agreement regarding your estimated time of arrival or time you expect to be able to begin work, based upon your current location and any activities in which you may be engaged. In general, it is the goal to begin work on the problem in approximately one hour,

measured from the time of your response to the page.  Individual departments may implement specific on-call programs designed to meet their business needs.

[Defendant] understands that you may or may not be able to meet the one-hour guideline and that, if you reasonably request more time to complete a personal pursuit in which you are engaged, your request will be granted.  However, if you are contacted, you cannot decline to provide the requested assistance altogether. You will be expected to respond within a reasonable period of time by addressing the problem over the telephone, by connecting to work on a computer, or by reporting to the work site.  You are expected to be in compliance with [Defendant's] Drug Free Workplace policy while performing such work.

You will have no restrictions on your time or activities beyond these basic guidelines, other than to remain in an area where you can receive messages by page or telephone and within a reasonable distance from work.

(Dkt. #1, Exhibit 3 at pp. 1–2).  Notably, Defendant placed minimal express restrictions on Plaintiffs—they simply had to remain in compliance with Defendant's Drug Free Workplace policy and stay in an area within a reasonable distance from work[4] where messages and calls could be received.

### a.  Plaintiff Wesley

Wesley was required to be on call after-hours both during the work week and on weekends. Wesley needed his cell phone, company-issued laptop, and access to the internet while on-call to ensure a timely response to any arising issues.  However, Defendant's policy did not specify the location where Wesley had to take the calls.  Wesley was required to respond to calls within fifteen minutes.  Because Wesley was the only member of the team competent in McAfee Endpoint,  he was not able to ask another employee to switch shifts.  Wesley estimated that he took anywhere from zero to seven calls a week, with most being around 2 a.m.

---

[4] The Court notes that "work" does not necessarily mean the physical location of the building.  With the exception of Phan and Dell, Plaintiffs' work was done entirely remote.  Thus, "work" in the policy seems to indicate a location where one could perform the duties required by the on-call issue.

Plaintiffs argue that "Wesley was unable to freely use his time for himself" due to the "quick response time required by the on[-]call policy" (Dkt. #54 at p. 6).  Wesley was allegedly "confined to his house, his in-laws' house, stores within 15 minutes of his house, and other nearby locations in order to answer calls in compliance with [Defendant's] policy" (Dkt. #54 at p. 6).  Central to Plaintiffs' claim, Wesley purportedly could not partake in activities he enjoyed—such as "having a beer with friends, going on long bike rides with his children, go[ing] to the movies, go[ing] to restaurants" or "even going on a walk" (Dkt. #54 at p. 6)

As previously noted, Defendant's on-call policy only expressly prohibited one of the many activities Wesley enjoyed: having a beer with friends.[5]  However, Wesley was free to do any of the other activities, subject to being called for a work-related issue.  Wesley was further able "be at his home or at any place he chose, without advising his employer, subject only to the restrictions" noted above.  *See Bright*, 934 F.2d at 676 (noting that on-call time was not compensable when the only restrictions included that the Plaintiff "be reachable by beeper, not be intoxicated, and be able to arrive at the hospital in 'approximately' twenty minutes").  Wesley "could go for walks and bike-rides near his house, go to nearby restaurants, watch television, read a book, barbeque on the back patio, cook, play board games or video games, visit with family, and sleep" (Dkt. #47 at pp. 12–13).

The undisputed facts show that Wesley "was given great latitude for his personal pursuits." *Driscoll*, 2013 WL 644305, at *4.  Wesley's decision not to partake in certain activities does not change the fact that he could have done so if he desired.  Further, the activities Wesley was prohibited from doing—namely, drinking alcohol and being more than fifteen minutes from his cell phone, work computer, and internet—did not place such substantial restrictions on his life that

---

[5] The Court assumes that the Drug Free Workplace policy expressly prohibits any consumption of alcoholic beverages.

he was "engaged to wait."  Wesley's life was not continuously interrupted with phone calls such that he could not finish a task; in fact, some weeks he received no calls at all.  The most calls Wesley could remember receiving in a week was seven.  While the Court recognizes that the calls routinely came in around 2 a.m., the FLSA does not compensate for mere inconvenience alone; rather, an employee must be engaged in "work."  *See Paniagua v. City of Galveston, Tex.*, 995 F.2d 1310, 1317 (5th Cir. 1993) (noting that even an "agreement to compensate employees for inconvenience does not[] . . . automatically render the time spent on standby 'working time' under the FLSA").  Wesley did not partake in certain activities due to the nature of his on-call work. Because Defendant was not required to allow Wesley "substantially the same flexibility or freedom" that he would have "if not on call."  *Bright*, 934 F.2d at 677, Wesley's on-call time was not primarily for the benefit of Defendant. Ultimately, Wesley could use the time "effectively for his own purposes."  *Id.*

### b.  Plaintiff Lugo

Lugo's employment required him to be on-call "for two weeks approximately every two months" (Dkt. #47 at p. 13).[6]  Lugo's team had a required response time of fifteen minutes.  While Lugo was the primary employee on all, he fielded five to ten calls per week.  On Lugo's secondary week, he received one or two calls.  Thus, Lugo would receive up to twelve calls every two months.[7]  Similar to Wesley, Lugo needed access to his cell phone, the internet, and either a company-issued or personal computer.  Unlike Wesley, Lugo and his team were able to switch on-call times without supervisor approval.  Lugo was not required to go to Defendant's physical office

---

[6] Plaintiffs claim that the rotation resulted in Lugo being on-call for "two weeks every month" (Dkt. #54 at p. 7). However, Lugo was one of ten employees in the rotation—each required to take one primary week and one secondary week.  Assuming each employee took a primary and secondary week before the rotation restarted, Plaintiff's calculations are a more accurate reflection of Lugo's on-call duties.

[7] Plaintiffs claim that Lugo's calls would sometimes "reach[] up to 12 calls outside of scheduled working hours per week" (Dkt. #54 at p. 7).  However, that would require Lugo be primary and secondary in the same week—which neither party alleges occurred.

to perform on-call work.  Lugo's only restrictions were those implemented by the policy—refrain from the consumption of alcohol and stay within a reasonable distance of a location where work could be done.

Plaintiffs claim that Lugo "was unable to do many of the activities he would normally do on his personal time, such as a long bike ride, go out to dinner, [or] have a beer with friends" (Dkt. #54 at p. 7).  Further, Lugo stayed in his home during his on-call weeks.  However, Lugo's choice to remain in his home while on call was just that: his choice.  Lugo took advantage of being in his home by "watch[ing] television and movies" (Dkt. #47 at p. 14).  Lugo also could "cook out, spend time with his children, sleep, mow the lawn, have people over to his house for a visit, read, and do chores around the house" (Dkt. #47 at p. 14).  These activities do not constitute work "primarily for the employer's benefit."  Rather, these activities easily fall within the definition of "personal pursuits."  Though Lugo felt restricted to his home, he realistically only received five to ten calls a week during his primary on-call time and one or two during his secondary week.  No facts indicate that the calls came in such a manner that made personal pursuits so difficult to accomplish as to qualify Lugo's idle time as "work" under the FLSA.

### c.  Plaintiff Nakonecznyj

Nakonecznyj could not recall the frequency with which Defendant required him to be on-call.  However, Nakonecznyj was on a team where employees rotated on-call duties.  Nakonecznyj also could not recall the time in which calls were required to be answered, but he claimed three minutes sounded correct.  Notably, the policy in place stated on-call employees had fifteen minutes to respond.  Nakonecznyj testified that he did not remember receiving very many calls, and there were some weeks he received none.  As with Lugo, Nakonecznyj did not leave his home while on

call, though no policy existed that prohibited excursions.  While on call, Nakonecznyj was required to have access to his cell phone, a company-issued laptop, and the internet.

Plaintiffs claim Nakonecznyj "believed that he was tied to the house" due to Defendant's policy that allegedly 'created a constraint onto [the employee's] freedom of movement'" (Dkt. #54 at p. 8).  Though Nakonecznyj did not leave his home, he "was able to read books, visit with his wife, eat, and sleep while on call" (Dkt. #47 at p. 16).  Importantly, Nakonecznyj was not on-call every day.  Further, Nakonecznyj received only a few, if any, calls—thus, his fear of interruption appears unsubstantiated from the summary judgment record.  Nakonecznyj's decision to remain home during on-call time was due to his own security concerns.  Neither Defendant's policy nor any supervisor required Nakonecznyj to remain at home.  Regardless, Nakonecznyj had the freedom to engage in personal pursuits while on-call—whether those pursuits were at his home or elsewhere.  Even though Nakonecznyj did not feel as if he could do anything he wanted while on-call, the Fifth Circuit does not require the employee have "substantially the same flexibility or freedom" as he would while he is not on call.  *Bright*, 934 F.2d at 677.  The undisputed facts show that Nakonecznyj could use his idle time "effectively for his own purposes."  *Driscoll*, 2013 WL 644305, at *4.

### d.  Plaintiff Dodson

Dodson was on call throughout her employment with Defendant, and she was one of only two employees who could work on U.S. single sign-on systems.  Dodson needed access to her cell phone, company-issued computer with VPN connection, and the internet[8] to respond to calls.  Though Dodson could not estimate how many calls she received after-hours, she noted the calls were frequent.

---

[8] Dodson had access to a personal hotspot so that she could access the internet essentially anywhere.

Plaintiffs argue that the on-call requirements negatively impacted Dodson's life.  Dodson testified that the "policy impacted her time with family and friends" due to her having to work on weeknights (Dkt. #54 at p. 9).  Plaintiffs claim that "[r]egardless of the activities Dodson engaged in, she was always required to keep her cellphone and laptop on her while on call to be readily available, even on vacation" (Dkt. #54 at p. 9).  Notably, however, "Dodson never received any emergency calls while she was on vacation" (Dkt. #47 at p. 18).

Though Dodson was required to maintain access to her cell phone, computer, and the internet, she did have one hour in which to respond to a call.  Further, Dodson "was able to watch television at home, spend time with her daughter, go to church, work in her garden (albeit not as much as she liked), go out to dinner with her family, attend some of her daughter's school events, and walk her dogs" (Dkt. #47 at p. 18).  Further, Dodson went on vacation while on call.  The restrictions placed upon Dodson by Defendant did not prevent her from partaking in personal pursuits.  While Dodson was unable to do everything she desired while on call, the Court notes that she was able to do more than merely wait around until she received a call.  Dodson's ability to take calls at any location supports a finding that the time spent on-call was primarily for Dodson's benefit.  Defendant did not require Dodson to immediately drop everything she was doing at any given moment to respond to a call—her response time was one hour.  Though Dodson frequently received calls, no facts indicate that the calls hindered Dodson's personal pursuits to the point where she "had almost no freedom at all."  *Halferty*, 864 F.2d at 1190.  The undisputed facts show that while Dodson may have been inconvenienced by the after-hours calls, her idle time cannot be considered "work" under the FLSA.

### e.  Plaintiff O'Connor

O'Connor's on-call schedule rotated where he was primary one week, secondary another week, and tertiary a third week.  O'Connor was generally required to respond in fifteen minutes, though for a brief time the response time was shortened to eight minutes.  O'Connor received anywhere from zero to two calls a week while he was on any week, regardless of his status as primary, secondary, or tertiary.  When responding to calls, O'Connor needed access to his cell phone, company-issued computer, and the internet.  O'Connor had a personal hotspot that provided internet when he was away from his home.  Further, O'Connor could ask another employee to cover his on-call shift, and the switch did not require managerial approval.

Plaintiffs assert that "O'Connor was limited to the activities he could engage in while on call" and he was "unable to engage in activities for himself" (Dkt. #54 at p. 10).  However, O'Connor testified that "he was able to watch television, play and spend time with his children, cook, go for walks, attend church, travel, have friends and family visit the house, go grocery shopping, and go out to eat at restaurants" (Dkt. #47 at p. 20).  Though O'Connor could not "go out on the lake or go camping" (Dkt. #47 at p. 20), those restrictions alone are insufficient to make O'Connor's idle time compensable.  As noted by the Fifth Circuit, an employee is not required to have "substantially the same flexibility or freedom as he would if not on call" because then "all or almost all on-call time would be working time, a proposition that the settled case law and the administrative guidelines clearly reject." *Bright*, 934 F.2d at 677.  O'Connor had ample freedom to engage in personal pursuits.  In fact, the record shows that O'Connor utilized his on-call time to live life normally—except for camping and going on the lake.  O'Connor's ability to engage in personal pursuits indicates that his idle time was not spent primarily for Defendant's benefit.  Thus, that time is not compensable under the FLSA.

15

### f.   Plaintiff Stephens

Stephens' employment required him be on call for two weeks—one week as the primary employee and one week as secondary—every month-and-a-half to two months.  Stephens had, at a minimum, fifteen minutes to respond to a call.  While on call, Stephens needed access to his cell phone, his company-issued computer, and the internet. Defendant provided Stephens with an internet card.  Stephens estimated that he received anywhere from zero to seven calls a week, though some weeks he received more.  Stephens was never required to go to Defendant's physical location in McKinney, Texas after-hours.

Plaintiffs claim "Stephens was unable to use his time for himself while on-call" (Dkt. #54 at p. 11).  Defendants claim that "Stephens understood that he should not leave his house so that he could be readily available to take calls so that the teams call response time was tightened up" (Dkt. #54 at p. 12).  However, Plaintiffs also concede that no policy prohibited Stephens from "grocery shopping and leaving the house" (Dkt. #54 at p. 11).  Despite Stephens' subjective feelings of being restricted by Defendant's policy, he still "was able to watch television, watch movies at home, surf the internet, watch YouTube videos, visit with friends, and go for walks in the neighborhood" (Dkt. #47 at pp. 21–22).  Although Stephens preferred to stay home to answer any calls, no facts indicate that he was restricted to his house.  Even if Stephens had been confined to one geographical area, he still was able to spend time in that area engaging in personal pursuits. Idle time in which an employee is watching television and movies, visiting with friends, eating, sleeping, surfing the internet, and walking around the neighborhood cannot be said to be spent primarily for the employer's benefit.  The Court's conclusion as to Stephens' on-call time is strengthened when it takes into consideration the infrequency of the calls.  As such, Plaintiffs have failed to create a compensable claim for Stephens.

### g.  Plaintiff Phan

Phan's employment with Defendant required him be on call approximately two weeks every two months, depending on how many other employees were in rotation.  Phan was required to answer a call within ten to fifteen minutes, and he testified that he received up to fourteen calls a week.   Additionally, Phan could switch his on-call week with another employee without managerial approval.  To respond to calls, Phan needed access to his cell phone, company-issued computer, and the internet.  Defendant provided Phan with an internet card, but the card's slow speed prevented Phan from wanting to use it.  While most of the calls could be handled remotely, Phan would occasionally have to travel to Defendant's physical location in McKinney, Texas.  However, Phan did not have a specified amount of time in which he had to arrive at that location.

Similar to the other Plaintiffs, Phan could "sleep, watch television, go out to eat at fast-food restaurants, read books, go for walks, eat dinner with his wife, spend time with his wife, go shopping at nearby stores, have friends over to visit, and play his guitar and piano" (Dkt. #47 at p. 23).  However, Phan felt that many of the activities were not feasible because of the risk of getting a call.  Further, Phan would "plan around his time on-call to not have to" go to the grocery store "because he would have a very limited time to do so and it is not free time as Defendant is portraying it is" (Dkt. #54 at p. 12).

While Phan was free to engage in various activities, receiving fourteen after-hour calls would make those activities difficult to complete.  According to Defendant's policy, however, if Phan had been engaged in a personal pursuit, Defendant would grant a request for a reasonable extension of time to answer a call.  Additionally, Phan testified that he was still able to do tasks the Court classifies as personal pursuits.  Though Phan averaged fourteen calls a week, he was not expected to spend the time between calls "waiting to be engaged" by Defendant.  Phan's ability to

watch television, eat dinner, have friends over, play musical instruments, go shopping at store nearby, read books, and go to fast-food restaurants while on call shows the Court that he could "use his on-call time effectively for his own personal purposes." *Bright*, 934 F.2d at 677. Although his freedom was somewhat restricted, Phan still have flexibility to choose how to spend his on-call time.

### h. Plaintiff Dell

Dell was required to be on-call two weeks—one as the primary employee on call and one as the secondary—every two months. Dell received three to four calls during his primary week and one to two calls during his secondary week. Dell could also switch on-call shifts with other employees without managerial approval. As with the other Plaintiffs, Dell was required to have access to his cell phone, company-issued computer, and the internet. Dell's response time depended on the classification of the call received. The calls received were often categorized as Priority Two, Priority One, or Severely Critical. Priority Two calls had a response time of ten to fifteen minutes; Priority One calls had a response time of five to ten minutes; and Severely Critical calls often required a response within one minute. Dell was required to go to the McKinney location a few times, though it was a rare occurrence.

Plaintiffs claim that "Dell's life was interrupted as other Plaintiffs' lives were interrupted while on call" (Dkt. #54 at p. 13).[9]  Though Dell's life was likely interrupted during the time he spent on-call, Dell could still "go out to eat at restaurants, sleep, eat, cook, barbeque, play certain video games, attend church online, watch television, watch movies, read, visit friends at their

---

[9] Plaintiffs also state that "Defendant failed to mention that an issue from a call can [last] (and has lasted) longer than 24 hours" (Dkt. #54 at p. 13).  However, Dell testified that during those long phone calls, the employee receiving the call could "push it over to [their] secondary and then they can take it for a little bit" so the employee can "come back after [he's] had a nap or something, and then [the employee] can take it back" (Dkt. #54, Exhibit 11 at p. 7).  Further, the length of a phone call is not at issue because there is no dispute that Dell was compensated for his time spent resolving on-call issues.

homes or his, go grocery shopping nearby, and go for walks" (Dkt. #47 at p. 25).  Dell had the

ability to "be at his home or at any place or places he chose, without advising his employer,"

subject only to the restrictions that he be reachable within the prescribed time limits and that he

refrain from drinking alcohol.  *Bright*, 934 F.2d at 676.  Dell received up to four calls a week

during his primary week and up to two calls a week during his secondary week.  As with the other

Plaintiffs, no facts indicate that Dell could not take advantage of Defendant's policy on asking for

a reasonable time extension to respond to a call if he was engaged in a personal pursuit.  Even if

Dell could not take advantage of a time extension, the number of calls he received in a week do

not appear to have hindered his ability to engage in activities both at his home and elsewhere.  Dell

had the freedom to take calls from wherever he had access to his cell phone, computer, and the

internet. The minimal restrictions placed on Dell by Defendant support a finding that Dell's on-

call time was not working time.

As demonstrated above, each Plaintiff had the ability to use on-call time to engage in

personal pursuits both within and outside their homes.  How Plaintiffs chose to spend the on-call

time was almost entirely up to the employee.  Thus, the time spent "on call" is not compensable

under the FLSA.

## III.   Representative Evidence

Defendant seeks dismissal of all Plaintiffs' claims.  In support of its request, Defendant

cites to evidence obtained from the depositions of the eight Plaintiffs above.  Specifically,

Defendant "moves to dismiss the claims of all Plaintiffs based on evidence provided by the

Representative Plaintiffs" (Dkt. #47 at p. 7).

"A representative or statistical sample, like all evidence, is a means to establish or defend

against liability."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016).  "Its

permissibility turns not on the form a proceeding takes . . . but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Id.* (citing Fed. R. Evid. 401, 403, and 702).  In the present case, "the basis of Plaintiffs' claims center around the unlawful nature of Defendant's 'on-call' policy for failing to correctly compensate Plaintiffs for all time worked," and "Plaintiffs are merely seeking reimbursement for the hours worked while on-call as Defendant's policies failed to adequately compensate Plaintiffs" (Dkt. #54 at p. 4). Ultimately, each Plaintiff asserts that Defendant did not adequately compensate them for overtime hours worked in violation of the FLSA.

In the Court's order granting conditional certification, the Court found that "each of the Class Employees' primary duties involved information technology support, which includes answering calls pursuant to [Defendant's] [p]olicy" (Dkt. #24 at p. 8).  When the Court granted conditional certification, it deemed the potential plaintiffs to be "similarly situated."  Necessarily, the Court found that Wesley submitted sufficient evidence to show that both he and the potential Plaintiffs were subject to the same policy.  The commonality requirement—preliminarily met by Wesley—between the Plaintiffs convinces the Court that the evidence obtained by the Representative Plaintiffs is reliable to establish that Defendant's "on-call" policy did not violate the FLSA as to the other opt-in Plaintiffs.  If the remainder of the opt-in Plaintiffs had substantially different circumstances, they would not be so "similarly situated" as to come within the potential plaintiff definition.  Further, the underlying claim centers around the "on-call" policy, which was enforced against all Plaintiffs.  Each Representative Plaintiff testified as to essentially the same facts—albeit details varied based upon which team the Plaintiff was a part of at the time.  Despite the small variances, all Plaintiffs testified that no prohibition on many personal pursuits was

enforced under the policy, and the Court has no reason to believe that the opt-in Plaintiffs would testify otherwise.

## IV.    Plaintiffs Dodson and O'Connor's Unrecorded Overtime Claims

Plaintiffs also argue in their response that Defendant is required to pay for all hours worked by Plaintiffs.  This argument appears to stem from the testimony of Dodson and O'Connor, whereby the two employees assert that they did not enter overtime hours.  Because Dodson and O'Connor did not enter their hours, they were not paid for the time they actually worked.  However, Plaintiffs' Complaint specifically alleges that "Defendant failed to properly enforce and comply with its own companywide 'On call' and 'Standby' policies that applied to all US-based non-exempt employees until late 2017 when Defendant made the uniform decision to revise these policies in a calculated effort to try and minimize its overtime obligations to Plaintiff and the Class Members" (Dkt. #2 at p. 1).

Wesley brought this suit on behalf of himself and those similarly situated on January 3, 2018 (Dkt. #1).  On August 30, 2018, Dodson opted-in to the lawsuit (Dkt. #27).  The Court does not have a filing of O'Connor's opt-in; however, it would presumably have been after notice was given to potential plaintiffs.  Wesley's original complaint "seeks relief on a collective basis challenging Defendant's practice or pay plan that failed to pay Plaintiff time-and-one-half of his regular rates of pay for all hours worked in excess of 40 in a work week" (Dkt. #2 at p. 4).  In the Court's Memorandum Opinion and Order granting conditional certification to the collective action, the Court noted that "Plaintiffs here have sufficiently alleged that they were victims of a similar plan under which they did not receive overtime compensation because Defendant had a policy of requiring Class Employees to perform 'standby,' 'on call,' and additional work for which they were not paid" (Dkt. #24 at p. 7).  Nowhere does Wesley allege that he was not compensated

for overtime hours he worked.  In fact, only two of the eight Representative Plaintiffs claim that they were undercompensated for actual working hours.  This claim is not common to the Plaintiffs in the collective action, and it could not have originally been brought by Wesley.  The Court therefore finds that although Plaintiff's complaint alleges broad violations of the FLSA, the conditionally certified collective action before the Court is an inappropriate vehicle through which to bring Dodson and O'Connor's individualized complaints against Defendant.

The Court recognizes the statute of limitations imposed by the FLSA.[10]  Dodson's claims arose during her employment with Defendant, beginning in 2013.  Though facts presented to the Court indicate that Dodson is no longer employed by Defendant, the Court is unaware of when that employment ceased.  Regarding O'Connor, the record shows that he "stopped entering his on-call time altogether around August of 2017" (Dkt. #54 at p. 10).  Thus, even with the three-year statute of limitations, O'Connor's claim for unpaid overtime would be time-barred.

Federal Rule of Civil Procedure 42(b) gives the court authority "[f]or convenience, to avoid prejudice, or to expedite and economize" to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  In this case, severing Dodson and O'Connor's claims for unpaid overtime hours actually worked would avoid prejudice by allowing Dodson and O'Connor to bring the claims, despite a potential statute-of-limitations issue.

---

[10] In Wesley's complaint, he alleges that Defendant "instructed Class Members not to record their on-call time, standby time, or actual hours of work, exhibiting a willful violation of the law" (Dkt. #2 at p. 4).  Though the complaint does not specifically outline the individualized claims now raised by Plaintiffs regarding Dodson and O'Connor's uncompensated overtime hours, the Court assumes without deciding that the three-year statute of limitations applies.

## CONCLUSION

It is therefore **ORDERED** that the claims pertaining to Plaintiff Dodson and Plaintiff O'Connor's non-paid overtime hours actually worked into individual suits be **SEVERED** into separate causes of action.  Plaintiff shall pay the filing fee for this case within fourteen (14) days of this Order issuing to avoid having the severed cause of action dismissed.

It is further **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #47) is hereby **GRANTED** as to all remaining claims, and Plaintiffs' remaining claims are **DISMISSED WITH PREJUDICE**.

**SIGNED this 26th day of February, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE